## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JAIME MARTINEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  11-cv-6811 |
| | ) | |
| BITZER PRODUCTS CO., | ) | Judge John Z. Lee |
| | ) | |
| Defendant. | ) | Magistrate Judge Jeffrey Cole |

### PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT

NOW COMES the Plaintiff, JAIME MARTINEZ ("Plaintiff"), by and through his attorneys, ED FOX & ASSOCIATES, and for his Motion for Entry of Judgment hereby states as follows:

### BACKGROUND

1.      On September 28, 2011, Plaintiff filed his complaint alleging claims under the Americans with Disabilities Act ("ADA") for discrimination and failure to provide a reasonable accommodation. *See* D.E. #1.  Plaintiff's complaint arose from the Defendant's termination of his employment on or about February 26, 2010.

2.      On July 10, 2012, the parties conducted a settlement conference with Magistrate Judge Jeffrey Cole that resulted in a confidential settlement agreement. *See* D.E. #30.  Both parties agreed to the terms of the settlement agreement on the record in open court and both parties subsequently signed a document titled "Confidential Separation Document and General Release" (hereinafter the "Settlement Agreement").  On July 25, 2012, the Court dismissed Plaintiff's claims without prejudice with leave to reinstate by December 17, 2012. *See* D.E. #34.

1

3.    The terms of the Settlement Agreement between the parties allowed for the Defendant to provide certain payments to the Plaintiff over a period of six months. The Defendant agreed to make payments on July 17, 2012 and the 10th of every month thereafter with the Defendant's last payment due on December 10, 2012. The amount of each payment is contained in the Settlement Agreement, which is being tendered to this Court under seal as Exhibit A because of certain confidentiality provisions.

4.    The Defendant made payments to the Plaintiff according to the terms of the Settlement Agreement in July, August and September 2012.

5.    On October 10, 2012, the Defendant failed to make the October, 2012 payment as required in the Settlement Agreement. The Defendant further failed to make the November, 2012 payment on November 10, 2012. As of today's date, the Defendant has failed to make the October and November payments.

6.    The Defendant has breached the terms of the Settlement Agreement by failing to make payments to the Plaintiff.

7.    After the Defendant failed to make payments in October and November, on November 12, 2012 Plaintiff filed a Motion to Reinstate the Case and to Enforce the Settlement Agreement ("Plaintiff's Motion to Reinstate"). *See* D.E. #35. This Court granted the Plaintiff's Motion to Reinstate on November 19, 2012. *See* D.E. #37.

8.    Based upon representations from counsel for the Defendant that the Defendant is out of money and has been placed in receivership, Plaintiff anticipates that Defendant will not make any of the remaining payments agreed to in the Settlement Agreement.

9.     On or about October 17, 2012, the Honorable Judge Moshe Jacobius of the Chancery Division of the Circuit Court of Cook County entered an Agreed Order Appointing Receiver and Granting Other Relief in Case No. 2012 CH 38246. The October 17, 2012 Order, attached hereto as Exhibit B, appointed a receiver for Bitzer Products and bestowed him with the authority to, amongst other things, conduct all business operations and manage all funds of Bitzer Products. Plaintiff first became aware of the Chancery Division action on November 19, 2012.

## ARGUMENT

I.         **JUDGMENT SHOULD BE ENTERED AGAINST THE DEFENDANT AND IN FAVOR OF THE PLAINTIFF BECAUSE THE DEFENDANT BREACHED THE SETTLEMENT AGREEMENT**

10.     The settlement of a federal claim is "enforced 'just like any other contract' . . . ." *Dillard v. Starcon Int'l, Inc.,* 483 F.3d 502, 506 (7th Cir. 2007) (quoting *Lynch, Inc. v. SamataMason Inc.,* 279 F.3d 487, 489 (7th Cir. 2002)). "Whether a settlement agreement is binding is an issue governed by the law of the state in which the parties executed the agreement." *Lewis v. Sch. Dist. # 70,* 648 F.3d 484, 486 n.1 (7th Cir. 2011); *see also Zilberstein v. College,* 286 F. App'x 938, 940 (7th Cir. 2008); *Sims-Madison v. Inland Paperboard and Packaging, Inc.,* 379 F.3d 445, 448 (7th Cir. 2004); *Pohl v. United Airlines, Inc.,* 213 F.3d 336, 338 (7th Cir. 2000) ("Issues regarding the formation, construction, and enforceability of a settlement agreement are governed by local contract law. . . .").

11.     Illinois law governs the validity of a settlement agreement because the parties executed the alleged agreement in Illinois. *Lynch, Inc.,* 279 F.3d at 489. The material terms of the settlement agreement must be "definite and certain," so the Court can determine when a breach occurs. *Dillard v. Starcon Intern., Inc.,* 483 F.3d 502, 508-09 (7th Cir. 2007).

12.     For a settlement agreement to be enforceable under Illinois contract law there must be an offer, acceptance, and a "meeting of the minds" as to the material terms of the agreement. *Petrich v. MCY Music World, Inc.*, 371 Ill.App.3d 332, 345, 308 Ill.Dec. 968, 862 N.E.2d 1171 (1st Dist.2007); *Magee v. Garreau*, 332 Ill.App.3d 1070, 1076, 266 Ill.Dec. 335, 774 N.E.2d 441 (2nd Dist.2002).

13.     On or about July 10, 2012, the Plaintiff and Defendant entered into an enforceable contract under Illinois law when they settled the instant case. Plaintiff and Defendant met each of the requirements to form a contract under Illinois law when they entered into the Settlement Agreement attached hereto as Exhibit A.

14.     The Defendant breached the Settlement Agreement on October 10, 2012 and November 10, 2012 when it failed to make payment to the Plaintiff on or before those dates. The Defendant does not dispute that it breached the Settlement Agreement when it failed to make certain payments to the Plaintiff.

15.     Plaintiff seeks entry of Judgment pursuant to Federal Rule of Civil Procedure 54(b) in favor of the Plaintiff and against the Defendant for breach of the terms of the Settlement Agreement entered into on or about July 10, 2012.

**II.          PLAINTIFF SHOULD BE GRANTED HIS ATTORNEY'S FEES AND COSTS INCURRED FOR SEEKING TO ENFORCE THE SETTLEMENT AGREEMENT AND OBTAINING JUDGMENT AGAINST DEFENDANT**

16.     Title 29, United States Code, Section 794a(b), states that "the court, in its discretion, may allow the prevailing party, ... a reasonable attorney's fee." 29 U.S.C. § 794a(b). Section 794a(b) is patterned on the language contained in 42 U.S.C. § 1988, a statute typically used in civil rights cases for recovery of attorney's fees. *Jones v. Illinois Dep't of Rehab. Serv.*, 689 F.2d 724, 730 n. 8 (7th Cir.1982).

17.     A litigant can be considered a prevailing party when he has "prevailed on the merits of at least some of his claims" or "obtained a judgment on the merits, a settlement agreement enforced through a consent decree, or some other judicially sanctioned change in the legal relationship of the parties." *Buckhannon Bd. of Care Home, Inc. v. West Virginia Dep't of Health and Human Res.,* 532 U.S. 598, 605, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001); *Dupuy v. Samuels,* 423 F.3d 714, 719 (7th Cir.2005); *Hanrahan v. Hampton,* 446 U.S. 754, 758, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980); *Palmetto Properties, Inc. v. County of DuPage,* 375 F.3d 542, 548 (7th Cir.2004)).

18.     The Seventh Circuit has held that "some settlement agreements, even though not explicitly labeled as a 'consent decree' may confer 'prevailing party' status, if they are sufficiently analogous to a consent decree." *T.D. v. LaGrange School Dist. No. 102,* 349 F.3d 469, 478 (7th Cir.2003) (citing *Smyth ex re. Smyth v. Rivero,* 282 F.3d 268, 281 (4th Cir.2002)).

19.     A settlement short of a consent decree may qualify for "prevailing party" status if the terms of the settlement were incorporated into the dismissal order which was signed by the court or the order provided that the court would retain jurisdiction to enforce the terms of the settlement. *See Petersen v. Gibson,* 372 F.3d 862, 866-87 (7th Cir.2004) (citing *T.D.,* 349 F.3d at 478-78; *Smalbein v. City of Dayton Beach,* 353 F.3d 901, 905 (11th Cir.2003).

20.     In this case, this Court placed the material terms of the settlement on the record and retained jurisdiction to enforce the parties' Settlement Agreement on July 10, 2012. *See* D.E. #30.

21.     "Attorneys' fees are assigned a 'lodestar' amount, [a figure which is] calculated by multiplying the number of hours the attorney reasonably expended on the litigation times a reasonable hourly rate." *Mathur v. Board of Tr. of Southern Illinois Univ.,* 317 F.3d 738, 742

(7th Cir.2003) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Dunning v. Simmons Airlines. Inc.,* 62 F.3d 863, 872 (7th Cir.1995)). "The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed." *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 550 (7th Cir.1999).

22. "'The reasonable hourly rate (or 'market rate') for lodestar purpose is 'the rate that lawyers of similar ability and experience in their community normally charge their paying clients for the type of work in question.'" *Garcia v. City of Chicago,* No. 01 C 8945, 2003 WL 22175620, at *2 (N.D.Ill. Sept.19, 2003) (citing *Hensley,* 461 U.S. at 434). "Evidence of 'market rate' includes rates other attorneys in the area charge paying clients for similar work, fee awards from prior cases, the attorney's credentials, and the attorney's actual billing rate." *Id.* (citing *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205,* 90 F.3d 1307, 1311-13 (7th Cir.1996)). "In addition, an attorney's affidavit alone cannot establish ... her market rate; however, such affidavit 'in conjunction with other evidence of the rates charged by comparable lawyers is sufficient to satisfy the plaintiff's burden." ' *Id.* (quoting *Harper,* 223 F.3d at 604).

23. Plaintiff seeks attorney's fees in the amount of $3,643.75 based upon the lodestar method outlined above. Attached hereto as Exhibit C is an affidavit from Attorney Jonathan R. Ksiazek regarding the Plaintiff's attorney's fees in this case.

## CONCLUSION

24. For the reasons stated above, Plaintiff seeks Judgment in the total amount of $9,043.75. Plaintiff's total requested amount consists of the following:

    a)    the remaining amount owed to Plaintiff from Defendant for the October, November and December payments pursuant to the terms of the Settlement Agreement, totaling $5,400.00;

b)      $3,643.75 for Plaintiff's attorney's fees (13.25 hours at a rate of $275.00

per hour) incurred for seeking to enforce the Settlement Agreement and the Entry

of Judgment.

WHEREFORE, Plaintiff requests that this Honorable Court enter Judgment in favor of

the Plaintiff and against the Defendant in the amount of $9,043.75 and for such other and further

relief as deemed just and necessary.

> Respectfully submitted,
>
> s/ Jonathan R. Ksiazek
> Jonathan R. Ksiazek
> ED FOX & ASSOCIATES
> Attorneys for Plaintiff
> 300 West Adams, Suite 330
> Chicago, Illinois 60606

# EXHIBIT A

# (filed under seal)

# EXHIBIT B

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| The John Bitzer Trust, The William B. Sturgeon Living Trust and the Arthur Bitzer Family Limited Liability Limited Partnership, ) ) ) | Case No.: 2012 CH 38246 |
| Plaintiffs. ) ) | Hon. Judge: Moshe Jacobius |
| vs. ) ) | |
| Wingspan Capital Partners LLC, a Michigan limited liability company; Bitzer Products Company, a Illinois corporation f/k/a CPB Acquisition Company; Aetna Bearing Company, a Illinois corporation; Uniprop, Inc., a Michigan corporation, Old Second Bancorp, Inc., a Delaware corporation registered to do business in Illinois, and Roger Zlotoff, individually, ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

## AGREED ORDER APPOINTING RECEIVER AND GRANTING OTHER RELIEF

This matter coming to be heard on the Emergency Motion of the John Bitzer Trust (the "Bitzer Trust") and the William B. Sturgeon Living Trust (the "Sturgeon Trust"), and the Arthur Bitzer Family Limited Liability Limited Partnership dated August 25, 1995 (the "Arthur Bitzer Family LLLP") (collectively with the Bitzer Trust and the Sturgeon Trust, the "Plaintiffs"), for the appointment of Alex Moglia of Moglia Advisors as receiver ("Receiver") of Bitzer Products Company; the Court having considered the Verified Complaint herein; and the Court being fully advised in the premises of the agreement between the parties:

1

**THE COURT HEREBY FINDS THAT:**

1.     Service of the Emergency Motion on the Defendants was proper under the circumstances and satisfies the requirements of due process. The Emergency Motion and Notice of the Emergency Motion was given on October 12, 2012, to:

    a)     Bitzer Products Company f/k/a CPB Acquisition Company – via overnight Federal Express on its Registered Agent Mark Boozell;

    b)     Roger Zlotoff – via overnight Federal Express, email and facsimile;

    c)     John E. Jacobs (Attorney for Bitzer Products Company and Roger Zlotoff) – via overnight Federal Express, email and facsimile;

    d)     Wingspan Capital Partners LLC – via overnight Federal Express and facsimile on its Registered Agent Paul Zlotoff;

    e)     Aetna Bearing Company – via overnight Federal Express on its Registered Agent Mark Boozell;

    f)     Uniprop, Inc. – via overnight Federal Express and facsimile on its Registered Agent Paul Zlotoff; and

    g)     Old Second Bancorp, Inc. – via overnight Federal Express to is Registered Agent William B. Skoglund and via overnight Federal Express, facsimile and email to its in house counsel (Bob Tirona) and loan officer (Travis Andry) handling this matter.

2.     Plaintiffs the Bitzer Trust and the Sturgeon Trust are lenders to Defendant Bitzer Products Company and hold a valid and perfected security interest in substantially all the assets of Bitzer Products Company securing valid matured and past-due indebtedness of not less than $894,832.56. The Bitzer Trust and the Sturgeon Trust were granted a valid and perfected first priority lien on the assets of Bitzer Products Company which lien has since been subordinated to Old Second National Bank ("Old Second") and to no one else.

2

3.     Old Second is a lender to Defendant Bitzer Products Company and holds a valid and perfected security interest in substantially all the assets of Bitzer Products Company securing a valid and undisputed indebtedness of $300,062.88 (the "Old Second Loan"), which represents $298,619.55 in principal and $1,443.33 in interest.  True and correct copies of Old Second's UCC-1 statements and payoff letter are attached hereto as <u>Exhibit A</u> and <u>Exhibit B</u> respectively.

4.     On September 28, 2012, Defendant Bitzer Products Company ceased operations and commenced a liquidation of collateral belonging to Old Second and the Bitzer Trust and the Sturgeon Trust, which liquidation did not have the consent of Old Second or the Bitzer Trust and the Sturgeon Trust.

5.     Thereafter on October 5, 2012, Bitzer Products Company sold certain gear boxes, in which Old Second the Bitzer Trust and the Sturgeon Trust have a valid and perfected lien, to L-3 Crestview Aerospace for the sum of $374,000 (the "L-3 Sale").  Bitzer Products Company used a portion of the proceeds, to pay Grindal Company who asserted a claim for $74,000.000. The remainder of the proceeds, $300,000.00 (the "Remaining L-3 Sale Proceeds"), was transferred to Aetna Bearing Company's bank account at Old Second on October 4, 2012 (the "Old Second Bank Account").

**IT IS HEREBY ORDERED:**

1.     Pursuant to 805 ILCS 5/12.50(b) Alex Moglia of Moglia Advisors is hereby appointed as Receiver of Defendant Bitzer Products Company.

2.     Alex Moglia, not personally, but solely in his capacity as Receiver, is hereby given:

      a.     Complete and entire possession of all Bitzer Products Company's right, title and interest in property of whatever type or description and where so ever located;

3

b.  The authority to operate and conduct all business operations of Bitzer Products Company, subject to the availability of funds, and subject to the approval of this Court to engage in proposed transactions outside the ordinary course of business;

c.  The authority to manage all funds of Bitzer Products Company, including to open and close accounts, and to sign checks;

d.  The authority to enter and secure the offices of Bitzer Products Company;

e.  The authority to direct, hire and fire employees;

f.  The authority to have immediate, unimpeded and complete access to all books, records, ledgers, security deposits, escrows, leases, contracts, computers, tax returns, tax records, and other information (whether written, electronic or any other media) relating to Bitzer Products Company;

g.  The duty to account to this Court for all property received and managed;

h.  The authority to act solely as Court-appointed receiver of Bitzer Products Company and not as Alex Moglia personally without recourse or liability to Alex Moglia personally;

i.  The duty to report to the Court in writing at intervals established by the Court;

j.  Upon motion or application to this Court, the right to compensation as determined by order of the Court;

k.  The right to sue and be sued not personally, but solely as receiver, including, but not limited to, assertion of all causes of action belonging to Bitzer Products Company as provided by 805 ILCS 5/12.60(f);

l.  Subject to the approval of this Court following a motion or application to this Court, the right to buy or sell assets outside the ordinary course of business;

4

m.  Subject to approval of this Court following a motion or application to this Court, the right to affirm or disaffirm leases and executory contracts;

n.  The right to seek other or further authority from this Court;

o.  The authority to commence a voluntary case for Bitzer Products Company under title 11 of the United States Code;

p.  The authority to retain the services o f Moglia Advisors personnel, including Mr. Wencel, to advise, and assist the Receiver, and to carry out tasks not personally but as agents and employees of Receiver, and that recourse against them be limited to recourse against Moglia, not personally, but solely as Receiver; and

q.  The Receiver may at any time file a motion requesting that he be exonerated, discharged and released from the receivership. All outstanding fees and out of pocket expenses due to the Receiver allowed by this Court, plus his legal counsel's fees and expenses, if any, allowed by this Court, will be paid in full from the remaining receivership's funds first.

3.  Pending further Order of this Court, Wingspan Capital Partners, LLC, Bitzer Products Company, Aetna Bearing Company, Uniprop, Inc. and Roger Zlotoff personally are enjoined from:

a.  interfering in any way with the Receiver's access to the collateral or with the receiver's review of the financial operations of the collateral and the operations thereon during the pendency of the receiver's appointment;

b.  taking or causing to be taken any action that would diminish or impair the value of Bitzer Products Company collateral;

c.  interfering with or hindering in any way whatsoever the receiver in the performance of the Receiver's duties herein described and in performance of any duties incidental to those duties;

    d.      withdrawing, transferring, conveying, concealing or otherwise disposing of any right title or interest of Bitzer Products Company in property wherever located;

    e.      removing any assets and from destroying, concealing, copying, altering or transferring any asset, including any books and records relating to the assets title or any right or interest in assets owned by Bitzer Products Company; and

    f.      transferring, conveying, assigning, pledging, deeding, selling, renting, leasing, encumbering, changing ownership of, vesting of title to, or otherwise disposing of Bitzer Products Company collateral.

4.      The Receiver is authorized to render services at the following hourly rates: (1) $450.00 per hour for Mr. Moglia; (ii) $390.00 per hour for Gary Wencel; and (iii) $150.00 to $300.000 per hour for other staff. In addition, the Receiver shall seek reimbursement for all reasonable costs and expenses incurred by him and his associates in fulfilling his obligations and duties as Receiver. However, no reimbursement of compensation shall be paid without further order of this Court.

5.      Plaintiffs have agreed to undertake and fund the payment and expenses of the Receiver not to exceed $25,000, solely to the extent no other assets are available to pay expenses of the Receiver. Should estate assets be available to pay the Receiver the Receiver's fees and expenses shall have priority over all other creditors. No payment by Plaintiffs shall be made without prior approval of this Court.

6.      [The requirement of bond is hereby waived.] [~~Bond in the amount of $_____, shall be posted by _____, 2012.~~]

6

7.     Immediately upon entry of this Order, Old Second is authorized and directed to setoff the Old Second Loan from Aetna Bearing Company's Old Second Account holding the Remaining L-3 Sale Proceeds in the amount of $300,000.00.

8.     Roger Zlotoff will remit a certified check payable to Old Second in the amount of $62.88 via overnight courier directly to Old Second for receipt on October 17, 2012, in full satisfaction of Old Second's lien.

9.     Old Second's lien is deemed released upon entry of this Order, but it shall file UCC-1 release statements by October 24, 2012, and shall give reasonable cooperation to release any and all liens it may now hold or assert against Bitzer Products Company.

10.     The Bitzer Trust and the Sturgeon Trust now hold a valid and perfected first priority lien on substantially all the assets of Bitzer Products Company, including without limitation, all inventory, accounts, equipment and proceeds therefrom.

11.     The Bitzer Trust and the Sturgeon Trust waive any claims, demands, and causes of action or right to the $300,000.00 paid to Old Second from the proceeds of the L-3 Sale.

12.     Old Second is hereby dismissed as a party Defendant.

13.     Defendant Roger Zlotoff is hereby dismissed with prejudice from Count VII (Breach of Fiduciary Duty and Trust). Count VII remains against Bitzer Products Company.

14.     Defendant Roger Zlotoff is hereby dismissed with prejudice from Count VIII (Action for Punitive Damages).

15.     Count II (Injunctive Relief) of the Complaint remains as pled against Defendants Wingspan Capital Partners, LLC, Bitzer Products Company, Aetna Bearing Company, Uniprop, Inc., and Roger Zlotoff.

16.     This case is set for further hearing on _November 8_____, 2012, *at 10:30 A.M.,* for the Receiver to inform the Court about his progress in undertaking the actions contemplated by this Order, and to consider his continuation in office on a permanent basis.

17.     Plaintiffs shall have seven (7) days from the entry of this Order to assert an interest in the equipment described in <u>Exhibit C</u> (the "Equipment"). Defendants will cooperate with Plaintiffs and the Receiver's investigation of the Equipment. An interest must be asserted in writing (which includes email) delivered to the Receiver with copies to John Jacobs. If the Plaintiffs do not assert an interest, Uniprop, Inc., takes the Equipment free and clear of any asserted lien by the Plaintiffs.

18.     This Court retains jurisdiction to construe and enforce this Order.

19.     There is no just reason to delay enforcement of this Order, and it is enforceable immediately according to its terms.

*[Signature Page Follows]*

8

Agreed to in Form and Substance:

Tressler LLP,

John Collen, Esq.
Attorneys for the Bitzer Trust, the
Sturgeon Trust, and the Arthur Bitzer
Family LLLP.


Maddin Hauser Wartell Roth & Heller PC,

John E. Jacobs, Esq.
Attorneys for Bitzer Products Company,
Uniprop, Inc., Aetna Bearing Company, Wingspan
Capital LLC, and Roger Zlotoff.


Old Second National Bank


Bob Tirona
In House Counsel at Old Second National Bank


[Signature Page Continues on Page 10]

9

Agreed to in Form and Substance:

Tressler LLP,

John Collen, Esq.
Attorneys for the Bitzer Trust, the
Sturgeon Trust, and the Arthur Bitzer
Family LLLP.


Maddin Hauser Wartell Roth & Heller PC,


John E. Jacobs, Esq.
Attorneys for Bitzer Products Company,
Uniprop, Inc., Aetna Bearing Company, Wingspan
Capital LLC, and Roger Zlotoff.

**Old Second National Bank**

Bob Tirona
In House Counsel at Old Second National Bank

ENTERED:

ENTERED
JUDGE MOSHE JACOBIUS-1556

OCT 17 2012

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Honorable Moshe Jacobius
Cook County Circuit Court Judge

DATED: October 17, 2012
370756

10

# EXHIBIT C

### AFFIDAVIT OF JONATHAN R. KSIAZEK

1.      I know the facts set forth below to be true of my own personal knowledge. If called upon to testify to these facts, I could and would do so.

2.      I am an attorney licensed to practice in Illinois since 2008.  I have been an associate attorney at Ed Fox & Associates for over three years.  I am admitted to both the general and trial bars of the Northern District of Illinois.

3.      I have practiced in the area of civil rights litigation for over three years. Before practicing in this field, I practiced commercial litigation for approximately one year.

4.      Prior to being employed as a lawyer, I studied Section 1983 litigation in law school at the University of Illinois.  While in school, I was a member of the Civil Rights Clinic at the University of Illinois and tried a three-day long Federal Civil Rights case in the Central District of Illinois.  I also was a member and coach of the Trial Team at the University Of Illinois College Of Law and coached the undergraduate Mock-Trial Team at the University of Illinois.

5.      In my career, I have been first or second chair in twelve trials.  I have been first or second chair in nine cases tried in Northern District of Illinois under Section 1983 against police or corrections officers, and in one employment discrimination case brought under Title VII in the Northern District of Illinois.

6.      My most recent victory in trial was in October, 2011 when I won a civil rights police abuse trial in front of Judge Darrah, Case Number 08-cv-7007.  In that case, the jury awarded $5,000 to my client.

7.      The usual and customary rate for my services as a fourth year attorney is currently $275.00 per hour.  This is the rate that I currently charge my hourly rate clients.

8.     In a Memorandum Opinion and Order in Case Number 08-cv-7352, dated August 16, 2010, Judge Dow of the Northern District of Illinois awarded me attorney's fees at a rate of $215.00 for services that I performed in 2008-2009 when I practiced commercial litigation at a previous firm[1]. At that time, I was a first year attorney.

9.     In a Minute Order entered in Case Number 11-cv-610 dated November 7, 2011, Judge St. Eve of the Northern District of Illinois awarded me attorney's fees at a rate of $250.00 for services that I performed in-between September and November, 2011 in a civil rights case[2]. At that time, I was a third year attorney.

10.     In a recent decision from the Northern District of Illinois in the case of *Jiminez v. City of Chicago*, Case No. 09-cv-8081, Judge Kennelly awarded attorneys with experience similar to myself from the civil rights firm of Loevy & Loevy a rate of $275 an hour.[3]

11.     Attached hereto as Exhibit 4 is a summary of my time entries for the case of *Martinez v. Bitzer Products, Co.*, Case No. 11-cv-6811, related to my preparation of the Motion to Reinstate the Case and to Enforce the Settlement Agreement, Motion for Entry of Judgment, preparation of the Fee Petition, and all court appearances related to those filings. In total, I have spent 13.25 hours working on matters related to reinstating the case and seeking judgment against the Defendant.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Chicago, Illinois this 27th day of November, 2012.

Jonathan R. Ksiazek

---

[1] Judge Dow's Opinion is attached hereto as Exhibit 1.
[2] Judge St. Eve's Order is attached hereto as Exhibit 2.
[3] The opinion from Judge Kennelly in *Jiminez v. City of Chicago*, Case No. 09-cv-8081, is attached hereto as Exhibit 3. The attorneys with similar experience are Scott Rauscher and Elizabeth Mazur, identified on pages 6-7 of the opinion. Rauscher graduated from law school in 2004 and began practicing in the area of civil rights in 2012 while Mazur graduated from law school in 2005 and began working for Loevy & Loevy in 2008.

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SATO & Co., LLC, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | (CONSOLIDATED) |
| | ) | |
| S&M PRODUCE, INC., et al., | ) | Case No. 08-CV-7352 |
| | ) | |
| Defendants. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| PRIDE OF SAN JUAN, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| S&M PRODUCE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Currently pending before the Court is the Pride of San Juan ("PSJ") Plaintiffs'[1] second

motion to clarify [195] the Court's February 2, 2010 order [173]. In the motion to clarify, the

PSJ Plaintiffs contend that in its February 2, 2010 order, the Court failed to award attorneys' fees

to the PSJ Plaintiffs and to claimants Sato, The Garlic Company, and Royal Rose (collectively

"the Sato Plaintiffs"), despite each group having timely submitted their fee requests and

supporting documentation. The motion also brings to the Court's attention the fact that the

February 2, 2010 order [173] inadvertently was inconsistent in its award of interest to the parties.

The February 2, 2010 order [173] is clarified and amended as follows.

---

[1] The PSJ Plaintiffs are Pride of San Juan, Inc., Classic Salads, LLC, Dayoub Marketing, Inc., Fru-Veg Marketing, Inc., Lakeside Produce, Inc., Natural Forest, Inc., Ruby Robinson Co., Inc., The Kinoko Company, The Mandolini Company, Inc., and Seashore West, Inc.

I.    **Background**

    A.    **Attorneys Fees**

The PSJ Plaintiffs sought reimbursement of attorneys' fees and costs under a common fund theory [150]. The Court denied the PSJ Plaintiffs' motion for reimbursement of costs and fees under a common fund theory in a memorandum opinion and order [171] issued on February 2, 2010.

In another February 2, 2010 order [173], this Court addressed the other PACA claimants' claims for contractual attorneys' fees, to which both the Sato Plaintiffs and Defendants had raised objections. First, the Court concluded that certain claimants' invoices created a contractual right to attorneys' fees. Second, the Court addressed the reasonableness of the claimed attorneys' fees. After considering the hourly rate and the documentation regarding the hours worked, the Court concluded that the fees requested by six claimants – Coosemans Chicago, Inc., Jab Produce, Inc., Tuchten, Sato, The Garlic Company, and Royal Rose – were reasonable. Therefore, as reflected in the Court's claim award chart set forth in the order [173], the Court awarded attorneys' fees to Coosemans, Jab, and Tuchten. However, the contract-based fees awarded to Sato, The Garlic Company, and Royal Rose inadvertently were omitted from the Court's claim award chart. The chart below remedies that error.[2]

With respect to the PSJ Plaintiffs, in the February 2, 2010 order [173], the Court noted that seven of the PSJ Plaintiffs – Classic Salads, Dayoub Marketing, Inc., Ruby Robinson Co., Inc., Natural Forest, Inc., The Kinoko Company, The Mandolini Co., Inc., and Seashore West – would have been entitled to contract-based attorneys' fees had they submitted proper

---

[2] The Court's prior order [173] also erroneously awarded World Wide and Fresh King their estimated attorneys fees despite the fact that they provided no documentation. The chart below also corrects that error.

documentation demonstrating the reasonableness of the claimed the hourly rate and the number

of hours worked.[3]  However, the Court disallowed the PSJ Plaintiffs' requests for contract-based

attorneys fees on the ground that they had failed to supply the required supporting

documentation.  In their second motion to clarify [195], the PSJ Plaintiffs point out that they

submitted the requisite documentation in connection with their common fund motion, and

request that the Court consider that documentation in connection with their request for contract-

based fees.

   As the Court noted in its April 14, 2010 minute order [200], it would be inequitable not to

consider the documentation that the PSJ Plaintiffs submitted in support of its request for common

fund fees as providing support for an alternative request for contract-based fees.  Therefore, the

Court will consider the reasonableness of the request for contract-based fees asserted by the

seven PSJ Plaintiffs that are entitled to such fees.  Those PSJ Plaintiffs seek $17,144.29 in

attorneys' fees and costs billed by two attorneys.[4]  [See ex. A to 201].  Defendants previously-

raised a number of objections to the reasonableness of the PSJ Plaintiffs' requested fees in the

context of the common fund motion.  See [155].  In particular, Defendants object to the PSJ

Plaintiffs' attorneys' fee request on a number of grounds: (1) the claimed hourly rates are

unreasonable; (2) the claimed hours are unreasonable, unnecessary, and did not benefit the other

---

[3] The three remaining PSJ Plaintiffs – Pride of San Juan, Fru-Veg, and Lakeside – are not entitled to and
do not request contract-based attorneys' fees.

[4] Counsel for the PSJ Plaintiffs have submitted documentation for a total of $34,576.39 in fees and costs.
The $17,144.29 in fees and costs that they seek to recover represents the *pro rata* share of that total for
the seven PSJ Plaintiffs that are entitled to contract-based attorneys' fees.  According to the PSJ
Plaintiffs' latest submission, they are entitled to 49.58% of the allowed fees and costs.  [See ex. A to 201].
In an earlier submission, it appears that the PSJ Plaintiffs claimed a *pro rata* share of 56.49% ($19,532.30
based on the $34,576.39 figure).  See [195, 197].  The reason for that apparent discrepancy is not entirely
clear, but the Court treats the more recent of the two submissions as the operative claim on behalf of the
eligible PSJ Plaintiffs.

beneficiaries; and (3) the costs are not sufficiently-documented. The Court addresses Defendants' objections in Section II.A below.

### B. Interest

On the basis of the circumstances as the Court understood them at the time of its February 2, 2010 order [173], the Court exercised its discretion to refuse to award statutory interest to Champ Produce. The Court reasoned that awarding such interest would be inequitable, given that each PACA claimant stands to recover only a *pro rata* share of its claims. Because Defendants objected only to Champ's claim for statutory interest, the Court erroneously believed that Champ was the only claimant seeking prejudgment interest at the Illinois statutory rate. The Court also noted that, if it were to award prejudgment interest, it would be inclined to do so at the federal statutory rate. It has since come to the Court's attention that its order was not consistent in regard to the award of interest. In particular, eight other claimants – Natural Selection, California Specialty Produce, California Citrus, Alamax, Alpine Foragers, PSJ, Lakeside, and Seashore – included prejudgment interest at the Illinois statutory rate in their total claims. The Court awarded that interest because no parties objected. The Court's order also awarded 17 claimants contractual interest at rates that far exceed the Illinois statutory rate of 5%. Finally, the Court did not award interest through the date of its order, as PSJ Plaintiffs argue it should have. The Court clarifies its order with respect to the award of prejudgment interest in Section II.B. below.

4

II.     **Analysis**

    A.     **Reasonableness of Counsel for PSJ Plaintiffs' Fee Petition**

        1.     **General Principles**

"When determining the reasonableness of attorneys' fees, a 'lodestar' analysis, which multiplies the attorneys' reasonable hourly rates by the number of hours reasonably expended, is typically the starting point." *A. Bauer Mechanical, Inc. v. Joint Arbitration Bd. of Plumbing Contractors' Ass'n and Chicago Journeymen Plumbers' Local Union 130, U.A.*, 562 F.3d 784, 793 (7th Cir. 2009). To determine an attorney's reasonable hourly rate, courts look to the "market rate" for the work performed, meaning "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 554-55 (7th Cir. 1999). The burden of proving the market rate is on the party seeking attorneys' fees. *Id.* at 554. "[O]nce the attorney provides evidence establishing his market rate, the burden shifts to the [opposing party] to demonstrate why a lower rate should be awarded." *Id.* at 554-55. Because "[t]he best evidence of the value of the lawyer's services is what the client agreed to pay him," an attorney's actual billing rate is "presumptively appropriate" for use as the market rate. *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 594 F. Supp. 2d 931, 934 (N.D. Ill. 2009) (citations omitted).

The party seeking attorney's fees also bears the burden of proving the reasonableness of the number of hours worked. *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 518 (7th Cir. 1993). "Hours spent are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Stark v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir. 2004). The Court also must disallow "hours spent on tasks that would not normally be billed to a paying client, [and] those hours expended by counsel on tasks that are easily delegable to non-professional assistance."

*Spegon*, 175 F.3d at 553 (internal citations omitted). This Court has broad discretion in setting the amount of the award, including reducing the claimed hours, so long as it explains deviations from the petitioner's claimed hours. *McNabola*, 10 F.3d at 519.

### 2.  Reasonableness of the Hourly Rates

The PSJ Plaintiffs seek fees at a rate of $325 per hour for the partner on the case, Michael J. Keaton ("Keaton"), and $215 an hour for the associate on the case, Jonathan Ksiazek. In its February 2, 2010 order [173], this Court found hourly billing rates of $300 per hour and $350 per hour to be reasonable. For the reasons stated in that order, the Court finds that the hourly rates claimed by counsel for the PSJ Plaintiffs are reasonable.

### 3.  Reasonableness of Number of Hours Billed

Counsel for Defendants conceded in open court that, in assessing the PSJ Plaintiff's request for contract-based fees, the Court should apply a reasonableness review, which necessarily is a much less searching review than would have been required in the context of a common fund request.[5] Consequently, a large portion of Defendants' objections to the PSJ Plaintiff's claimed fees and costs – which were asserted in the context of a common fund request – no longer are relevant. For example, Defendants object to numerous billing entries on the

---

[5] A party that helps to create a common fund is entitled to reimbursement out of the common fund only for those hours worked that led "directly" to "the availability of funds" in the PACA trust (from which all PACA creditors will benefit). *In re Milton Poulos, Inc.*, 947 F.2d 1351, 1353 (9th Cir. 1991). Furthermore, under the common fund doctrine, reimbursement for attorney's fees from the common fund is appropriate only where the Court can identify the PACA claimants who actually benefited from a particular action such that the costs of that action can be shifted "with some exactitude" to its beneficiaries. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 265 n. 39 (1975); see also *Matter of Fesco Plastics Corp., Inc.*, 996 F.2d 152, 157 (7th Cir. 1993) (application of common fund doctrine "is most appropriate when (1) the class of persons benefitted by the lawsuit is small and easily identifiable, (2) the benefits can be traced with some accuracy, and (3) the costs of the litigation can be shifted accurately to those who profit by it"). Finally, the award of attorneys' fees out of a common fund is warranted only to prevent unjust enrichment of the other PACA beneficiaries.

ground that the work did not benefit other trust creditors, which no longer is a relevant consideration.[6]

### a.    Secretarial/Clerical/Non-Legal Work

Counsel for the PSJ Plaintiffs' fee petition includes hours expended by counsel on clerical and non-legal work "that [was] easily delegable to non-professional assistance." *Spegon,* 175 F.3d at 553. Seventh Circuit precedent requires this Court to disallow those hours. *Id.*

Specifically, on February 12, 2009, counsel for the PSJ Plaintiffs[7] billed .6 hour (at $235 per hour) preparing summonses, and Mr. Keaton spent .2 hour (at $325 per hour) revising those summonses. Because that work is clerical, those hours are disallowed. See *First Colonial Trust Co. v. H.S. Crocker Co., Inc.*, 1994 WL 49025, at *16 (N.D. Ill. Feb. 15, 1994) (reducing hourly rate for "the preparation of the summons" on the grounds that they "could have been prepared by a paralegal"); *Thomas ex rel. Smith v. Sheahan*, 556 F. Supp. 2d 861, 890 (N.D. Ill. 2008) (disallowing time spent drafting summons as clerical).

Also on February 12, 2009, counsel for the PSJ Plaintiffs[8] billed 1.8 hours (at $235 per hour) for preparing documents for service and filing. Again, that is clerical work and thus the claimed hours are disallowed.

Mr. Keaton billed .4 hour (at $325 per hour) for a conference with the process server on February 19, 2009. That task was easily delegable to non-professional assistance, and therefore

---

[6] In view of the disjunction between the common fund context in which the objections were made and the "reasonableness" standard that the parties agree should be applied, the Court need not address each and every one of the numerous objections raised in Defendants' written submission. Rather, the Court will address only those objections that are relevant to a "reasonableness" analysis.

[7] It is unclear which attorney – Mr. Keaton or Mr. Ksiazek – billed this time as the billing rate ($235) does not correspond to either of the attorneys' billing rates, which are $325 per hour and $215 per hour respectively.

[8] Again, the claimed billing rate does not match that of either of the two attorneys who, according to counsel for the PSJ Plaintiffs, handled all matters in this litigation.

the time is disallowed. See *Williams v. Z.D. Masonry, Corp.*, 2009 WL 383614, at *3 (N.D. Ill. Feb. 17, 2009) (disallowing time spent working with process server as clerical).

In sum, a total of $759 in fees will be deducted from the fee award sought by counsel for the PSJ Plaintiffs on the grounds that certain entries are for uncompensable clerical work.

### b. Excessive Billing

Although the Court overrules many of the objections lodged by Defendants, the Court agrees that some of the hours billed by counsel for the PSJ Plaintiffs are excessive.

In the March 13, 2009 invoice, Mr. Keaton charged 1.5 hours (at $325 per hour) for a conference with the Court Clerk "to advise of TRO package being filed and agenda for emergency hearing with judge." That time entry is manifestly excessive and thus unreasonable. Between March and April, counsel for the PSJ Plaintiffs billed another 1.5 hours and $454.50 to various conferences with the Court Clerk. For example, on March 2, 2009, Mr. Ksiazek spent 18 minutes discussing the supplemental order to the TRO with this Court's clerk. Again, the Court finds the amount of time billed to be excessive, particularly in light of the fact that communications with the Court's Clerk could be considered clerical. See *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir.1999) (upholding the district court's finding that tasks such as in conferences with a paralegal regarding the paralegal's communications with the court's minute clerk constituted unrecoverable administrative tasks). The Court reduces the number of hours spent conferencing with the Court Clerk to 1 hour, and charges that time at the lower rate of $215 per hour. Therefore, $727 is deducted from the fee request.

On February 24, 2009, Mr. Ksiazek billed 2.3 hours (at $215 per hour) preparing a one and a half page agreed supplemental order "to establish the manner of disposal or sale of Defendant's inventory of perishable agricultural commodities" and other assets and providing

8

that Defendants could remove from the S&M location the company's books and records. In the Court's judgment, spending 2.3 hours drafting a short agreed order is too much. The amount of time billed to the initial drafting is reduced to 1.5 hours.[9] Consequently, another $172 in fees will be deducted from the fee award.

Mr. Keaton billed a total of 5.8 hours and $1,885 to conferences with *pro se* claimants. The Court concludes that a paying client should not be billed for such discussions with non-clients absent a showing that the client benefitted from the conversation, which has not been made. Therefore, the Court disallows that time, and deducts another $1,885 from the PSJ Plaintiffs' counsel's requested fees. See *Pasternak v. Radek*, 2008 WL 2788551, at *9 (N.D. Ill. April 3, 2008) (disallowing hours spent on non-clients).

Mr. Keaton billed a total of 13.3 hours and $4,322.50 for drafting, reviewing, and revising the claims procedure order. That does not include the additional time that PSJ's counsel spent conferencing with co-counsel regarding the claims procedure order in an effort to resolve disputes between the parties. While the Court appreciates the parties' efforts to reach a global agreement on the terms of a proposed Consent Injunction and PACA claims procedure, 13.3 hours spent simply on drafting and revising the document – wholly apart for the time spent negotiating with the other parties – is not reasonable. The amount of time billed for this task is particularly unreasonable in light of the fact that firms with a significant PACA practice – like Mr. Keaton's – have standard claims procedure documents. Therefore, the initial drafting of the claims procedure document should not have been time consuming. The number of hours billed

---

[9] Counsel for the PSJ Plaintiffs billed another .5 hours at $325 per hour to revising the supplemental order to incorporate suggestions from co-creditor counsel, as well as .4 hours at $325 per hour to obtain consent of all counsel to the final agreed supplemental order. The Court declines to reduce these time entries, as cooperation between counsel increases judicial efficiency and ought to be encouraged.

to drafting, reviewing, and revising the claims procedure order is reduced to 8 hours, and another $1,722.50 in fees are deducted from the fee award.

### c.    Billing Falling Under Flat Rate

Counsel for the PSJ Plaintiffs concede that they failed to redact several time entries for tasks that they agreed to undertake for a set fee. In particular, counsel for the PSJ Plaintiffs agreed to "notify all potential PACA trust claimants of the PACA trust claim procedure set forth" in Consent Injunction and Order for Establishing PACA Trust Claims Procedure [53] entered by the Court on March 17, 2009 for $500.00. See [53] at ¶ 15. According to the Claims Procedure, the parties agreed that $500 constituted "reasonable compensation for all costs, including without limitation, postage charges and attorneys' fees, incurred by Counsel for Pride of San Juan in connection with sending the notice." *Id.* However, the fee petition includes time entries related to the issuance of claims procedure notices. In particular, Mr. Ksiazek billed .3 hours (at $215 per hour) to preparing a list of PACA creditors requiring notice, and Mr. Keaton billed .4 hours (at $325 per hour) to revise and amend a cover letter to the potential claimants. Mr. Keaton also billed .4 hours to reviewing the results of all certified mailings for the claims chart. In view of the agreement set forth in paragraph 15 of the Claims Procedure, counsel for the PSJ Plaintiffs should not have billed their paying clients separately for these tasks. Therefore, the time entries discussed above are disallowed, and another $324.50 is deducted from the claimed fees.[10]

Defendants contend that counsel for the PSJ Plaintiffs also have included time entries related to the collection of the Defendants' accounts receivable. In particular, on March 4, 2009,

---

[10] As discussed below, the PSJ Plaintiffs also seek reimbursement of the $458.27 that they spent on postage for the claims procedure notices. That expense also is covered by the agreed upon flat fee and thus the request for reimbursement will not be allowed.

Mr. Ksiazek billed 1.5 hours (at $215 per hour) for reviewing Defendants' list of accounts receivable and locating phone numbers and addresses. On March 4th and 6th, Mr. Keaton billed .5 hours and 1.3 hours respectively to reviewing Defendants' accounts receivable. According to Defendants, these hours "ought to be included in the arrangements made for collection of the ARs on a contingent fee basis" and therefore "should have been omitted entirely because Keaton has agreed and obtained authority to collect the ARs under conditions he requested." [155, at 27]. Defendants are referring to the Court's June 12, 2009 order [146], which granted counsel for the PSJ Plaintiffs authority to recover 20 identified accounts receivable, and ordered that any and all recoveries on those 20 receivables be divided 33.3% to counsel for the PSJ Plaintiffs and 66.7% to the registry to fund pro-rata distributions to all PACA claimants. Plaintiffs state that they "are not seeking compensation for collecting the Defendants' accounts receivable." [159, 4] It appears to the Court that the time entries at issue, which predate the entry of the June 12th, 2009 order, are related to the identification, rather than the collection, of Defendants' accounts receivable. Therefore, the time entries are allowed.

In sum, for the reasons stated above, $5,590.00 in claimed attorneys' fees are disallowed.

### d.    Costs

The contractual provisions at issue provide that the "Buyer [Defendants] agrees to pay all costs of collection, including attorneys' fees." Therefore, counsel for the PSJ Plaintiffs are entitled to reasonable costs, in addition to attorneys fees. See *Kaiser v. MEPC American Properties, Inc.*, 518 N.E.2d 424, 427 (Ill. App. Ct. 1st Dist.1987) (even where contract provides for attorney fees and costs, only reasonable fees will be allowed); *Manufacturers Life Ins. Co. (U.S.A.) v. Mascon Information Technologies Ltd.*, 270 F. Supp. 2d 1009 (N.D. Ill. 2003) (where contract provided for award of fees, postponing decision on reasonableness of attorneys' fees and

11

costs until the party seeking those fees filed time records and other itemized costs). Parties seeking reimbursement "must present enough supporting documentation to allow the Court to determine whether specific costs are reasonable and necessary." *Fischer v. Avanade, Inc.*, 2007 WL 3232494, at *1 (N.D. Ill. Oct. 31, 2007). The Court "may reduce or deny reimbursement for any expenses that are not properly documented." *Fruit Belt Canning Co., Inc. v. Heinemann's Inc.*, 2006 WL 1430801, at *2 (N.D. Ill. May 17, 2006). The PSJ Plaintiffs request $3,195.89 in costs. Defendants object that the costs are not adequately documented. At the time that Defendants filed their objections they were correct – the costs were not sufficiently supported with documentary evidence. Indeed, counsel for the PSJ Plaintiffs had filed no supporting documentation at that time. However, in response to Defendants' objections, counsel for the PSJ Plaintiffs submitted supporting documentation. Therefore, many of the claimed costs now are adequately documented and, in the Court's judgment, are reasonable. Those claimed costs that are not reasonable are addressed below.

### 1. March 13, 2009 Billing Statement

Counsel for the PSJ Plaintiffs request reimbursement for $242 in travel expenses incurred in connection with attending the February 13, 2009 TRO hearing, the February 19, 2009 preliminary injunction hearing, and the February 24, 2009 status hearing. In support of these costs, the PSJ Plaintiffs have submitted three expense reports and parking receipts for February 19, 2009 and February 24, 2009. For each court appearance, counsel for the PSJ Plaintiffs seek to recover for parking, mileage (at a rate of $1 per mile), and dry cleaning costs. Counsel for the PSJ Plaintiffs have not submitted dry cleaning receipts. Therefore, those expenses are not sufficiently documented. And, in any event, the Court does not consider counsel's dry cleaning to be a necessary expense. See *FMS, Inc. v. Volvo Const. Equipment North America, Inc.*, 2009

WL 1851136, at *3 (N.D. Ill. June 29, 2009) (disallowing cost of dry cleaning service for witnesses on the ground that it is not "necessary to the litigation"). Therefore, $42 – the cost of the dry cleaning – is deducted from the claimed costs.

Counsel for the PSJ Plaintiffs also seek reimbursement for $691.20 in copy expenses. These expenses are not recoverable for a number of reasons. First, the PSJ Plaintiffs have submitted no invoice or bill for these charges, and therefore they are not adequately documented. Moreover, the billing statement does not indicate how much was charged per page. Therefore, the Court cannot determine whether the request is reasonable. See *Bodum USA, Inc. v. La Cafetiere, Inc.*, 2009 WL 1702808, at *4 (N.D. Ill. June 17, 2009) ("Courts in this circuit have found rates up to 20¢ per page to be reasonable," and will reduce the per-page rate for copies where the claimed rate exceeds that charged by outside copy shops). Finally, the PSJ Plaintiffs fail to identify what documents were copied, making it impossible to discern whether these costs were reasonably necessary. See *American Automotive Accessories v. Fishman*, 991 F. Supp. 995, 997 (N.D. Ill. 1995) (denying request for copying costs where documentation submitted did not "describe what was copied * * * [or] the costs per page or the number of the copies"); *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991) (party seeking copying costs is "not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs," but must "provide the best breakdown obtainable from retained records"). Accordingly, the PSJ Plaintiffs' request for reimbursement of these copy expenses is denied.

### 2. April 21, 2009 Billing Statement

Counsel for the PSJ Plaintiffs request $71 in expenses incurred traveling to the March 11, 2009 hearing on the PACA claims procedure. Again, counsel for PSJ Plaintiffs seeks to recover

for the cost of his dry cleaning. For the reason stated above, that amount – $15 – is deducted from the claimed amount.

As referenced above, counsel for the PSJ Plaintiffs request reimbursement of $458.27 expended on postage. The documentation counsel for the PSJ Plaintiffs have submitted verifying these costs simply lists the names and addresses of various companies to which the PSJ Plaintiffs' attorneys apparently mailed documents, the date on which the documents were sent, and the cost of postage associated with each mailing. The date for each mailing is March 19, 2009. According to the billing statements, counsel for the PSJ Plaintiffs sent out claims packages to potential trust claimants on March 19, 2009. Thus, it appears that the PSJ Plaintiffs are seeking reimbursement for the postage costs incurred sending out those claims packages. However, pursuant to paragraph 15 of the Claims Procedure [53], counsel for the PSJ Plaintiffs was required to notify all potential PACA trust claimants of the PACA Trust claim procedure by registered or certified mail. And the parties expressly agreed that $500 was reasonable compensation for all costs incurred in connection with sending the notice, including postage charges. [53, ¶ 15]. Therefore, counsel for the PSJ Plaintiffs may not be reimbursed for these costs, and the request for postage is denied.

Counsel for the PSJ Plaintiffs also seek reimbursement for another $741.90 in copy expenses. Like the copying costs discussed above, these expenses are not recoverable because they are not adequately documented, and therefore the Court cannot determine whether these costs were reasonable or necessary.

### 3. June 23, 2009 Billing Statement

Finally, counsel for the PSJ Plaintiffs request another $78.30 for copying. Again, the copying expenses are not recoverable because they are not adequately documented, and therefore the Court cannot determine whether these costs were reasonable or necessary.

\* \* \*

In sum, the Court deducts $2,026.67 in costs from counsel for the PSJ Plaintiffs' claimed fees and costs, in addition to the $5,590.00 in fees disallowed above. Therefore, a total of $7,616.67 is deducted from the PSJ Plaintiffs' total amount of documented fees – $34,576.39. Put another way, the PSJ Plaintiffs have demonstrated that $26,959.72 of their total attorneys' fees and costs are reasonable. However, as discussed above, because only seven of the ten PSJ Plaintiffs are entitled to attorneys fees, their counsel can recover only a percentage of that $26,959.72. That percentage is either 49.58% or 56.49%, depending on which of the PSJ Plaintiffs' submissions is correct.

This is not the first time that disparities in submissions by the PSJ Plaintiffs have caused confusion regarding their requested fees, and the Court already has given PSJ Plaintiffs one opportunity to clarify their request for fees. See [200]. In response, the PSJ Plaintiffs filed a Supplemental Filing to Clarify Calculation of Claims [201]. It is that document that indicates that the PSJ Plaintiffs are entitled to 49.58% of the total allowed fees and costs. The Court will treat the latest submission, which the PSJ Plaintiffs filed in order to clarify their position, as the correct one. Therefore, the Court concludes that PSJ Plaintiffs are entitled to $13,366.63 in fees and costs.

## B. Interest

In light of the developments discussed above, the Court revises its February 2nd order [173] to award Champ prejudgment interest. Contrary to the PSJ Plaintiffs' claims, the award of prejudgment interest in the PACA context is not mandatory, nor is the Court required to use the Illinois statutory rate. As the Court explained in its initial order, the question of whether to award prejudgment interest under PACA absent contractual right, as well as the proper rate of interest, is left to the discretion of the court. See *Middle Mountain Land and Produce Inc. v. Sound Commodities Inc.,* 307 F.3d 1220, 1226 (9th Cir. 2002) (holding that "a district court may award reasonable prejudgment interest to PACA claimants if such an award is necessary to protect the interests of PACA claimants, and that such an award absent contract is discretionary"); see also *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.,* 67 F.3d 1063, 1071-72 (2nd Cir. 1995) (holding that district court has broad discretion to fashion prejudgment interest award to PACA claimants, and holding that the district court did not abuse its discretion in awarding prejudgment interest at the federal statutory interest rate as opposed to the higher New York statutory rate); *Fresh Kist Produce, LLC v. Choi Corp., Inc.,* 251 F.Supp.2d 138 (D. D.C. March 10, 2003); *In re Southland + Keystone,* 132 B.R. 632 (9th Cir. BAP 1991); *Ger-Nis Intern., LLC v. FJB, Inc.,* 2008 WL 2704384, at *17 (S.D.N.Y. July 3, 2008); *May Produce Co., Inc. v. East West Imports, Inc.,* 2009 WL 4884154, at *2 (N.D. Tex. Dec. 15, 2009). As noted above, when the Court issued its February 2, 2010 order [173], it was under the misapprehension that Champ was the only claimant seeking prejudgment interest. Based in large part on that misunderstanding, as well as on the fact that each PACA claimant stands to recover only a *pro rata* share of its claims, the Court concluded that it would be inequitable to award prejudgment

interest to Champ alone. The Court also noted that, if it were to award prejudgment interest, it would be inclined to do so at the federal statutory rate.

However, upon reconsideration in light of the fact that most claimants are entitled to contractual interest, the Court concludes that the award of statutory interest would not be inequitable. Therefore, statutory prejudgment interest is awarded to all claimants seeking it.[11]

With respect to the proper interest rate, the parties appear to have contemplated in their contracts the use of the state interest rate to calculate prejudgment interest. In order not to disrupt the parties' expectations, the Court concludes that use of the Illinois rate of 5% interest is appropriate. See 815 ILCS 205/2.

Finally, the Court must determine the date through which interest should be calculated. Generally, prejudgment interest is awarded through the date of judgment. See, e.g., *Cement Division, Nat'l Gypsum Co. v. City of Milwaukee*, 144 F.3d 1111, 1117 (7th Cir. 1998) ("the very name 'prejudgment' interest strongly suggests that the relevant date is a judgment date"). The Court sees no reason to deviate from that general rule here. The complications that have arisen in unpacking all of the issues related to the parties' claims do not change the fact that the claimants have been without access to the funds for the duration of the litigation. In order to effectuate the purpose of prejudgment interest – that is, making the claimants whole – the Court awards prejudgment interest at the Illinois statutory rate through the date of judgment. The Court will enter judgment in this matter on September 17, 2010. Each claimant is directed to calculate the interest that it is due (at either the Illinois statutory rate of 5% or the proper contractual rate) through September 17, 2010, and to file a short document advising the Court (and counsel for Defendants) of the appropriate amount by September 1, 2010. Defendants are

---

[11] The claimants seeking statutory prejudgment interest include: Pride of San Juan, Lakeside Produce, Seashore West, Natural Selection Foods, California Specialty Produce, California Citrus Specialties, Alamax, Alpine Foragers.

given until September 7, 2010 to lodge any objections to any of the proposed interest calculations.

## IV.    Conclusion

For the foregoing reasons, the PSJ Plaintiffs are awarded $13,366.63 in attorneys' fees and costs. The claims are allowed as revised below. On September 17, 2010, the Court will issue a final chart setting forth the total allowable claim for each claimant, and will enter judgment on those amounts.[12]

| Claimant | Principal Amt. of Debt | Contract Interest | Statutory Interest | Atty. Fees and Costs Allowed[13] | USDA Filing Fee per Federal Law | Disallowed Portion of Principal | Total Claim Allowed |
|---|---|---|---|---|---|---|---|
| Pride of San Juan, Inc. | $59,014.13 | --- | | --- | --- | --- | |
| Classic Salads, LLC | $37,354 | | --- | | --- | $10,053.24 | |
| Dayoub Marketing, Inc. | $17,864.66 | | --- | | --- | $3,875 | |

---

[12] Also pending before the Court are the PSJ Plaintiffs' Motion for Entry of Judgment Against Defendant S&M Produce, Inc. and for Disbursement of Registry Funds [191] and the PSJ Plaintiffs' Motion for Entry of Judgments for Pride of San Juan Plaintiffs Against Defendant S&M Produce, Inc. [210]. In each motion, the PSJ Plaintiffs ask this Court to enter judgment in their favor against the corporate defendant, S&M Produce, Inc. In light of the Court's intention to enter judgment on September 17, 2010, after each claimant calculates and submits the amount of prejudgment interest to which it is entitled, the PSJ Plaintiffs' motions [191, 210] are denied without prejudice.

[13] While the Court concludes that seven of the PSJ Plaintiffs – Classic Salads, Dayoub Marketing, Inc., Ruby Robinson Co., Inc., Natural Forest, Inc., The Kinoko Company, The Mandolini Co., Inc., and Seashore West – are entitled to a total of $13,366.63 in attorneys' fees and costs, the Court has not apportioned that amount between the seven claimants. Therefore, the chart does not set forth an amount of attorneys' fees and costs allowed for those seven claimants despite the fact that the Court has concluded that collectively they are entitled to a total of $13,366.63 in attorneys' fees and costs.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Fru-Veg Marketing, Inc. | $12,007.80 | --- | Interest pursuant to PACA default order award: $101.66 | --- | $500 | --- | |
| Lakeside Produce, Inc. | $15,753 | --- | | --- | $100 | --- | |
| Natural Forest, Inc. | $9,440.30 | | --- | | --- | $1,725 | |
| Ruby Robinson Co., Inc. | $1,844 | | --- | | --- | $500 | |
| The Kinoko Company | $6,529 | | --- | | --- | $1,175 | |
| The Mandolini Company, Inc. | $883.50 | | --- | | --- | $200 | |
| Seashore West, Inc. | $4,262.25 | --- | | | --- | $500 | |
| Sato & Co., LLC | $59,915.75 | | --- | $8,716.86 | --- | --- | |
| The Garlic Company | $23,292.50 | | --- | $3,388.23 | --- | --- | |
| Champ Produce, Inc. | $61,773.05 | --- | | --- | --- | $1,576.83 | |
| Royal Rose, LLC | $26,024.80 | | --- | $3,786.26 | --- | --- | |
| World Wide Produce | $4,167.50 | | --- | --- | --- | $3,030 | |
| Natural Selection Foods, LLC | $8,041.85 | --- | | --- | --- | $1,600 | |
| California Specialty Produce, Inc. | $10,019 | --- | | --- | --- | $2,000 | |
| California Citrus Specialties, Inc. | $24,598 | --- | | --- | --- | --- | |
| Northern Pine, Inc. | $29,351 | | --- | --- | --- | --- | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Van Solkema Produce, Inc. | $3,264 | | --- | --- | --- | $1,109.27 | |
| Alamax, Inc. d/b/a Nature's Best Garden | $1,621.64 | --- | | --- | --- | $550.57 | |
| Dietz & Kolodenko Co. | $657.50 | | --- | --- | --- | $224.28 | |
| Alpine Foragers Exchange, Inc. | $15,101.75 | --- | | --- | --- | --- | |
| JAB Produce, Inc. | $2,253.50 | | --- | $305.18 | --- | --- | |
| Jack Tuchten Wholesale Produce, Inc. | $1,203 | | --- | $162.90 | --- | $474.50 | |
| Fresh King Inc. | $13,599 | | --- | --- | --- | $2,700 | |
| Coosemans Chicago, Inc. | $4,186.75 | | --- | $746.92 | --- | --- | |
| Pearson Food Corp. | $17,012.45 | --- | --- | --- | --- | $9,164.50 | |

Dated: August 16, 2010

_____

Robert M. Dow, Jr.
United States District Judge

# EXHIBIT 2

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 11 C 610 | DATE | 11/7/2011 |
| CASE TITLE | Alvarez vs. Morgan et al | | |

### DOCKET ENTRY TEXT

The Court grants Plaintiff's Fee Petition [27] in part and denies it in part. The Court awards attorney's fees to Plaintiff in the amount of $1975.00.

■[ For further details see text below.]                                                              Notices mailed by Judicial staff.

### STATEMENT

Before the Court is Plaintiff's Fee Petition, which Plaintiff filed pursuant to the Court's October 13, 2011 Order. For the following reasons, the Court grants Plaintiff's Petition in part and denies it in part.

### BACKGROUND

On May 23, 2011, Plaintiff served all Defendants with a First Set of Interrogatories and a Request for Production of Documents (the "Discovery Requests"). (R. 27 at 1.) Defendants failed to provide responses to the Discovery Requests, despite Plaintiff asking for responses from the Defendant several times and agreeing to an extension of the time to respond. (*Id.* 1-2.) As of August 31, 2011, Plaintiff still had not received responses to the Discovery Requests, and he therefore filed a motion to compel. (R. 16.) At a status hearing held on September 7, 2011, the Court granted Plaintiff's motion to compel and ordered the Defendants to answer all outstanding discovery by no later than September 21, 2011. (R. 18.)

Continued...

| | Courtroom Deputy Initials: | KF |
|---|---|---|

11C610 Alvarez vs. Morgan et al

Defendants failed to comply with the Court's order. On September 23, 2011, Plaintiff filed a motion for sanctions against Defendants. (R. 19.) Plaintiff presented his motion to the Court on September 30, 2011, at which time the Court denied the motion without prejudice and gave leave to reinstate the motion if Defendants did not produce the requested materials by October 7, 2011. (R. 22.) At the parties' status hearing on October 13, 2011, Plaintiff renewed his motion for sanctions because the Defendants did not produce the requested materials by October 7, 2011. The Court granted Plaintiff's motion and directed Plaintiff to file a fee petition by October 27, 2011. (R. 24.)

Plaintiff seeks attorney's fees in the amount of $2,250.00, which represents the time Attorney Jonathan R. Ksiazek spent in 1) preparing and filing a motion to compel, a motion for sanctions, and the fee petition; and 2) appearing in Court on three separate occasions to obtain the necessary discovery responses. Defendants do not object to Plaintiff's Petition.

## LEGAL STANDARD

When determining whether attorney's fees are reasonable, the Court considers the lodestar figure, namely, "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The "lodestar figure is the 'starting point'" and "[o]nce that figure is determined, the court may consider other factors set out in *Hensley*," which "include whether the documentation of the hours is adequate and whether 'billing judgment' was used." *Enoch*, 570 F.3d at 823–34. Courts are mindful that a "request for attorney's fees should not result in a second major litigation." *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010) (quoting *Hensley*, 461 U.S. at 437). "In light of this concern, as well as the fact that determining what qualifies as a 'reasonable' use of a lawyer's time is a highly contextual and fact-specific enterprise," district courts have wide latitude when awarding attorney's fees. *Sottoriva*, 617 F.3d at 975.

## ANALYSIS

The party seeking an award of attorney's fees has the burden of proving the "reasonableness of the hours worked and the hourly rates claimed." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999) (citing *Hensley*, 461 U.S. at 433). The court has "an obligation to exclude from this initial fee calculation hours that were not reasonably expended on the litigation." *Id.* (citations and internal quotation marks omitted); *Stark v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir. 2004) (courts should exclude from the fee petition "excessive, redundant, or otherwise unnecessary" time spent).

In support of his Petition, Plaintiff submits an affidavit from Attorney Johnathan Ksiazek. Mr. Ksiazek is a third-year associate attorney with the law firm of Ed Fox & Associates. (R. 27, Affidavit ¶ 6.) Mr. Ksiazek has considerable experience litigating and trying civil rights cases given his relatively short career as a lawyer, and the usual and customary rate for his services is $250.00 per hour. (*Id.* ¶¶ 4-6.) Defendants do not challenge the propriety of Mr. Ksiazek's hourly rate. Because this is the rate Mr. Ksiazek charges his clients, and because the rate is consistent with Mr. Ksiazek's legal experience and quality of work performed in this case, the Court finds that it is a reasonable rate. *See Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 594 F. Supp.2d 931, 934 (N.D. Ill. 2009) ("[t]he best evidence of the value of the lawyer's services is what the client agreed to pay him" and therefore an attorney's actual billing rate is "presumptively appropriate" for use as the market rate).

Mr. Ksiazek avers that he spent a total of nine hours bringing the Defendants' discovery deficiencies to the attention of the Court and obtaining the Court's orders granting the motion to compel and motion for sanctions. (R. 27, Affidavit ¶ 8.) He attaches his time sheets evidencing the entries related to the motion to

11C610 Alvarez vs. Morgan et al

compel, motion for sanctions, discussions with Defendants' counsel regarding discovery deficiencies, and relevant court appearances. (*Id.* at Ex. 2.) A few of the time entries, however, do not appear to relate to his attempts to procure discovery from Defendants, but rather relate to producing discovery material to Defendants on behalf of his client. *See, e.g.*, 9/14 entry for 54 minutes for "Meeting with client to review new discovery and finalize production"; two 9/19 entries for a total of 13 minutes re "send[ing] out discovery documents." Those entries, which total one hour and seven minutes, do not relate to Plaintiff's attempt to procure discovery responses from the Defendants, and therefore the Court will not award attorney's fees for that time. Accordingly, the Court awards attorney's fees for 7.9 hours at a rate of $250 per hour, for a total award of $1975.00.

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's Fee Petition in part and denies it in part. The Court awards attorney's fees to Plaintiff in the amount of $1975.00.

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THADDEUS JIMENEZ, )
)
        Plaintiff, )
)
vs. )    Case No. 09 C 8081
)
CITY OF CHICAGO and )
JEROME BOGUCKI, )
)
        Defendants. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

      Thaddeus Jimenez sued City of Chicago and Jerome Bogucki, a former Chicago

police detective, for claims arising from his wrongful conviction of the murder of

Eric Morro. Jimenez served approximately sixteen years in prison before his conviction

was vacated and he was released. In January 2012, a jury returned a verdict in favor of

Jimenez and awarded him $25 million. In July 2012, the Court denied defendants'

motion for a new trial and their motion for judgment as a matter of law.

      Jimenez has now petitioned for an award of attorney's fees pursuant to 42 U.S.C.

§ 1988. "The most useful starting point for determining the amount of a reasonable fee

is the number of hours reasonably expended on the litigation multiplied by a reasonable

hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This "lodestar" figure can

then be adjusted based on twelve factors described in *Hensley*. *Id.* at 434 n. 9.[1]

---

[1] "The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the
questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of
employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether

A reasonable hourly rate is "one that is derived from the market rate for the services rendered." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (internal quotation marks omitted). If the attorney has an actual billing rate that he or she typically charges and obtains for similar litigation, that is presumptively his hourly rate. *Id.* In some situations, however, the attorney does not have an established market rate, for example, because he or she typically uses contingent fee arrangements or relies on statutory fee awards. In that situation, a court should rely on the "next best evidence" of the attorney's market rate, namely "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Id.* (internal quotation marks omitted). "The fee applicant bears the burden of 'produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984)). If the applicant satisfies this burden, then the opposing party has the burden to offer evidence "that sets forth a good reason why a lower rate is essential." *Id.* (internal quotation marks omitted).

Plaintiff has offered a significant amount of evidence concerning the appropriate hourly rates. This includes affidavits by the attorneys the present case; affidavits of experienced civil rights attorneys who were not involved in this case; affidavits of attorneys that were submitted by fee applicants in other litigation; and citations to fee awards in other cases. Defendants have supported their position with affidavits of attorneys that were submitted by fee applicants in other litigation and citations to fee awards in other cases.

3

$495 is fully warranted based on Loevy's "experience, reputation, and ability." *Hensley*, 461 U.S.at 430 n.3.

Arthur Loevy has been a licensed attorney since 1964 but has practiced law for only about twenty-two years since that time (as a labor lawyer from 1963 to 1970 and as a civil rights lawyer from 1997 to the present). His role in the present case appears to have involved, for the most part, settlement negotiation and negotiation strategy. The Court has conducted numerous settlement conferences with Mr. Loevy in this and other cases, and he is a highly effective advocate for his clients in that arena. Given his relatively limited focus with respect to this case, however, and his relative level of civil rights practice experience vis-à-vis other lawyers whose rates the parties offer for comparison purposes, the Court respectfully finds that the appropriate hourly rate for his services in this case is $425.[3]

Michael Kanovitz is also a partner at Loevy & Loevy and has been practicing law for eighteen years, eleven of them as a civil rights plaintiff's attorney. His work on the present case was relatively limited. The Court has, however, had the opportunity to observe Kanovitz in action in other cases, primarily the aforementioned *Young* case, in which he served as principal counsel for a class of over 300,000 Cook County pretrial detainees and obtained an extraordinary result on their behalf. Kanovitz's written, oral,

---

[3] Plaintiff also offers an undated contract with the Transitional Administrator of the Cook County Juvenile Detention Center, who employed Loevy & Loevy to represent him in connection with his work in *Doe v. Cook County*, Case No. 99 C 3945. Based on the Court's examination of the docket in the *Doe* case, it appears that the contract was executed in or about 2008, because that is when attorneys from the Loevy firm filed appearances in that case. Pursuant to that contract, Arthur Loevy is compensated at a rate of $550 per hour. Plaintiff has not attempted to explain the nature of the work that Mr. Loevy does in that case, however, so the Court cannot say that it is sufficiently comparable for present purposes.

is a 2005 law school graduate who practiced in commercial litigation with a large law firm until early this year, when he joined Loevy & Loevy. Elizabeth Mazur is a 2005 law school graduate who clerked for a federal court of appeals judge and then worked for a not-for-profit agency for two years as a litigator. She joined the Loevy firm in 2008.

Mandell, Rauscher, and Mazur are appropriately compensated at rates similar to each other given their relative experience, with Mazur a bit higher than the others to account for her greater degree of experience. Each of them is appropriately compensated at levels significantly below the rates cited by plaintiff for significantly more experienced plaintiff's civil rights attorneys ($395 to $425). See Pl.'s Mem. at 8-9. It is also appropriate to compensate them at a somewhat lower level than their colleague Feldman, who has a greater level of litigation experience and law practice experience. The Court approves a rate of $300 for Mandell and $275 for Rauscher and Mazur.

Katie Hill is a 2007 law school graduate who worked as a staff attorney for a not-for-profit agency and then clerked for the undersigned judge. Following her clerkship, she worked for Loevy & Loevy for about one year. She now works for the Office of the State Appellate Defender. Rachel Steinback is a 2008 law school graduate who worked for a large law firm for one year, joined Loevy & Loevy in 2009, left the firm one year later for a federal district court clerkship, and then rejoined the firm in 2011. Steven Art is a 2009 law school graduate who clerked for a federal court of appeals judge for two years and then joined Loevy & Loevy in 2011. Finally, Vincenzo Field is a 2011 law school graduate who joined the Loevy firm in January 2012.

7

arguments – in terms of both content and delivery – that the undersigned judge has observed in thirteen years on the bench. The evidence submitted by plaintiff establishes that Bowman's experience, ability, and reputation make him quite worthy of an hourly rate that places him at or near the top tier of plaintiff's civil rights litigators in Chicago. The Court approves the $450 rate that plaintiff proposes; indeed, a higher rate might have been warranted had plaintiff requested it.

**3.     Valorem Law Group**

Stuart Chanen has been an attorney since 1985. He clerked for a judge in this district, worked for a civil litigation firm for thirteen years, worked for four years as an Assistant United States Attorney in this district; and then worked on commercial civil litigation and white collar criminal defense for five years at a large law firm. He joined Valorem Law Group in 2009, and his experience in civil rights litigation is all since that time. That said, Chanen's significant experience as a litigator and trial attorney in both civil and criminal cases is largely (though not entirely) transportable into the civil rights field. Defendants cite approved rates of $400 per hour, in 2009, 2011, and 2012 for several attorneys with similar levels of litigation experience but more civil rights litigation experience. *See* Defs.' Mem. at 6. Chanen's appropriate rate is, in the Court's view, approximately that of these attorneys. The Court approves a rate of $425 for him, which is slightly below the rate that he charged clients for commercial civil litigation during nearly all of the relevant period.

Lisa Carter has been a licensed attorney since 2008. Consistent with the discussion earlier, an appropriate rate for her services is $225, the same rate as the one the Court approved for Rachel Steinback, who has a similar level of experience. As

9

for the District of Columbia to determine reasonable hourly rates in fee-shifting cases.

*See* http://www.justice.gov/usao/dc/divisions/Laffey_Matrix_2003-2013.pdf (last visited

Nov. 13, 2012). The Seventh Circuit has never addressed the viability of the Laffey

Matrix as a measure of reasonable hourly rates. As that court recently noted in a case

in which a district court had relied on the Matrix,

> [n]o circuit outside the D.C. Circuit has formally adopted the Laffey Matrix,
> and few have even commented on it. While some circuits have applied
> the Laffey Matrix, other circuits have expressed concerns about the
> Matrix's utility outside its circuit of origin. . . . The district courts [in this
> circuit] that have considered the Laffey Matrix have viewed it with differing
> levels of praise and skepticism. . . . The Laffey Matrix is not without its
> critics . . . . Even the D.C. Circuit has referred to the Matrix as "crude" and
> has recommended that plaintiffs provide affidavits, surveys, and past fee
> awards to enable the district court to refine the Matrix for the particular
> attorney.

*Pickett*, 664 F.3d 649-50 (internal quotation marks and citations omitted). Given these

concerns and the Seventh Circuit's expressed preference for other, more direct

measures of reasonable hourly rates, the Court has not relied on the Laffey Matrix in the

present case.

**6.      Chart showing adjudicated hourly rates and fee awards**

The following chart lists the hourly rates the Court has determined for each

lawyer and paralegal; the agreed-upon compensable hours for each; and the total fees

awarded for each lawyer and law firm.

## 7.      Expenses

The parties have agreed to expense awards in the following amounts:  $54,859

for MacArthur Justice Center; $57,962 for Valorem Law Group; and $29,226 for Loevy &

Loevy.  The total of these amounts is $142,047.  *See* Pl.'s Mem., Ex. A.

### Conclusion

For the reasons stated above, the Court grants plaintiff's petition for attorney's

fees and costs [dkt. no. 345].  The Court awards plaintiff attorney's fees of

$1,740,899.20 and costs of $142,047 pursuant to 42 U.S.C. § 1988.


_____
MATTHEW F. KENNELLY
United States District Judge

Date:  November 14, 2012

13

**EXHIBIT 4**

# Martinez v. Bitzer Products, Co.  Case No. 11-CV-6811

Attorney Jonathan Ksiazek's Hours for Purposes of Seeking Entry of Judgment

| DATE | SERVICE | HOURS |
|---|---|---|
| | | |
| | | |
| | | |
| 11/07/12 | Conduct research in support of Motion to Reinstate Case and Enforce Settlement Agreement | 1.50 |
| 11/08/12 | Prepare draft of Motion to Reinstate Case and Enforce Settlement Agreement | 3.00 |
| 11/08/12 | Edit and revise draft of Motion to Reinstate Case and Enforce Settlement Agreement; File Motion with Court | 1.50 |
| 11/19/12 | Attend Court Hearing on Motion to Reinstate Case and Enforce Settlement Agreement | 1.00 |
| 11/20/12 | Attend Court Hearing on Motion to Reinstate Case and Enforce Settlement Agreement | 1.00 |
| 11/26/12 | Conduct research in support of Motion for Entry of Judgment | 1.50 |
| 11/26/12 | Prepare draft of Motion for Entry of Judgment | 2.75 |
| 11/27/12 | Prepare affidavit in support of Motion for Entry of Judgment and summary of hours and costs | 1.00 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| | | |
|---|---|---|
| **TOTAL HOURS** | 13.25 |
| **RATE** | $275.00 |
| **TOTAL FEES** | $3,643.75 |
| **BALANCE DUE** | **$3,643.75** |